# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Case No. _____

**J. LEE BROWNING BELIZE TRUST,**

**Plaintiff,**

     **-vs-**

**BRUCE LYNTON, STEVE DAUBENMIER, and DONALD MILLER,**

**Defendants.**

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff J. Lee Browning Belize Trust, by its attorney, George M. Allen, states:

### Introduction - Nature of the Action

1.     Plaintiff J. Lee Browning Belize Trust (hereafter, the Belize Trust) is a Trust organized under the law of Belize.  The Trust is situated in Belize, and is a citizen of Belize.

2.     Plaintiff Belize Trust is the Owner of Condominium Unit 1-A in a project originally known as the Aspen Inn Apartments, and now known as the Aspen Mountain Condominiums, in the City of Aspen, Colorado. The Condominiums are subject to a condominium governance regime adopted prior to the 1992 enactment of the Colorado Common Interest Ownership Act (CCIOA).

3.     On or about June 6, 2014 Unit 1-A experienced a major drain and sewage backup

of black water into the unit, flooding floors, drywall, carpet, floor coverings, and furnishings with contaminated black water.

4.    The Aspen Mountain Condominium Association, Inc. (AMCA) is a Colorado Not-For-Profit Corporation, and is the homeowners association for the Aspen Mountain Condominium Project.

5.    The Defendants are the officers of AMCA.  Defendant Lynton is, on information and belief, understood by Plaintiff to be a citizen of Australia.  Defendants Daubenmier and Miller are, on information and belief, understood to be citizens of Colorado, or of some other state of the United States.

6.    This action arises from the acts of Lynton in preventing the contracted-for service of Roto-Rooter Plumbing and Drain Service of Glenwood Springs, Colorado (Roto), to assist Plaintiff Belize Trust with carrying out such diagnostic and mechanical repair services as were, (and continue to be), reasonably necessary to fully and definitively remediate the mechanical system serving Unit 1-A, so as to prevent recurrence of black water backups into Unit 1-A.

7.    As officers of AMCA, the defendants owe fiduciary duties to the owners of the condominium units that make up AMCA.

**Jurisdiction and Venue**

8.    Jurisdiction of this Court is based on diversity of citizenship under 28 U.S.C. §1332(a)(2), based on citizenship of the Plaintiff  Belize Trust in Belize, citizenship of Defendant Lynton in Australia, and citizenship of Defendants Daubenmier and Miller in either Colorado or other states of the United States.

8.      The matter in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs, as required by 28 U.S.C. §1332(a).

9.      Venue is established in this District under 28 U.S.C. §1391(b)(1) and (2) on the basis of principal place of the business functions of Defendants, as officers of AMCA, in this District, and the fact the transactions and occurrences giving rise to this action having occurred in this District.

**Parties**

10.     The plaintiff J. Lee Browning Belize Trust is a separate legal personality, organized under the law of Belize and situated in Belize.  It is a Belize citizen.  The Trust is the current owner of Unit 1-A of the Aspen Mountain Condominium property.  Unit 1-A was conveyed to the Trust by way of a deed that conveyed all of the right, title and interest of the prior owner, which right, title and interest included the vested right to quiet enjoyment of the condominium unit.

11.     Defendant Lynton is an officer of the AMCA homeowners association. The Association operates to govern and administer the Aspen Mountain Condominium Association under applicable Colorado law pertaining to common interest ownership properties, and is, on information and belief, the officer of AMCA who had active communication with personnel of Roto, directing Roto not to come on the property of either Unit 1-A, or the property of the AMCA complex in general, to carry out Roto's contracted-for activities to diagnose and remedy mechanical services to Unit 1-A, so as to prevent recurrence of the June 6, 2014 black water backup.

12.    The tortious conduct of Defendant Lynton, described in the preceding paragraph, is imputed to Defendants Daubenmier and Miller, based on their having acted, and having continued to act, in concert with Defendant Lynton to prevent the Plaintiff Trust from being able to carry out effective remediation of the defective mechanical services to Unit 1-A.

13.    The tortious conduct of Defendant Lynton, described in paragraph 11 above, constituted a deliberate breach of Lynton's fiduciary duty to Plaintiff to maintain the overall well-being and sound administration of AMCA, and to take such actions as were, and continue to be, reasonably necessary to diagnose and remedy the continuing risk of black water backup into Unit 1-A, and into other units of AMCA.

14.    Defendants Daubenmier and Miller have acted in concert with one another and with Defendant Lynton in the continuing breach of all of the Defendants' fiduciary duties to Plaintiff to maintain the overall well-being and sound administration of AMCA, and to take such actions as were, and continue to be, reasonably necessary to diagnose and remedy the continuing risk of black water backup into Unit 1-A, and into other units of AMCA.

**General Averments**

15.    The legal description of the property owned by the Plaintiff Trust, and involved in this litigation is:

CONDOMINIUM UNIT 1-A, Aspen Inn Apartments NOW KNOWN AS ASPEN MOUNTAIN CONDOMINIUMS according to the Map thereof recorded November 30, 1972 in Plat Book 4 at Page 332 as Reception No. 155597 and as further Defined and described in the Condominium Declaration for Aspen Inn Apartments recorded November 30, 1972 in Book 269 at Page 312 as Reception No. 155596 and the Amended and Restated Condominium Declaration for Aspen Mountain Condominiums Recorded July 6, 2010 as Reception No. 571810

16.     On or about June 6, 2014, that part of the sewage disposal and drain line running from Unit 1-A to the main sanitary sewer system of the AMCA complex, and then to the sanitary sewer system of Aspen became blocked at a point on the sewage disposal and drain line lying outside the physical boundaries of Unit 1-A, and within the general common elements of the Aspen Mountain Condominium property.  As a result of the blockage, black water backed-up into Unit 1-A, rending the unit uninhabitable.

17.     The June 6, 2014 sewage blockage and backup was the fourth such incident within the preceding several years.

18.     As a consequence of the June, 2014 backup, the plaintiff Trust was forced to incur substantial expense for removal of sewage-soaked carpeting and flooring, walls, and furnishings, as well as related and disgusting elements of damages arising from sewage backup.  In addition, the Trust incurred and/or became liable for costs of temporary lodging and other sewage backup-related damages.

19.     Over the past several years, it has been the intention and undertaking of the plaintiff Trust to sell Unit 1-A.  From time to time Unit 1-A has been listed for sale with a licensed real estate broker, for the purpose of offering Unit 1-A for sale.

20.     The Aspen real property market is broker-driven.  By that it is meant that the only effective means of offering Aspen real property for sale is through real estate brokers.

5

21.     It not practically feasible to sell Aspen property other than through licensed real estate brokers because the persons and business entities making up the market for Aspen real property are found throughout the United States and elsewhere in the world.  Most such prospective buyers are visitors to Aspen for only days or weeks, and their means of access to information about potential real property purchases is through engaging brokers to identify what properties are available for sale. For the reasons set forth below, Aspen brokers will not list property with substantial distressed circumstances, such as that described in this Complaint, due to the deliberate refusal of Defendants to themselves take necessary action, as officers of AMCA, to definitively remedy the mechanical systems defect related to Unit 1-A and to the AMCA complex in general.

22.     There has been at least one black water backup into Unit 1-B of the AMCA complex.  Unit 1-B adjoins Unit 1-A on a horizontal plane, and shares a party wall with Unit 1-A.  Undivided one-quarter interests in Unit 1-B are owned by each of the three defendants in this action.

23.     Notwithstanding repeated demand, the defendants, acting in their fiduciary capacities as officers of AMCA, have deliberately failed and refused to make a definitive repair of the point or points in the sewage disposal and drain lines that have caused in the past, and have the latent potential to cause in the future, repeated blockages of the sewage and drain disposal line(s) servicing Unit 1-A, in particular, and the AMCA complex in general, resulting in backups of black water into both Units 1-A and 1-B.  Instead of definitive repair, which will

require replacement of deteriorated sewage and drain pipe(s), and probable straightening or lessening of a 90º turn in the sewage disposal line serving Unit 1-A and the units vertically above Unit 1-A, defendants, as officers of AMCA, have been willing only to have the sewage disposal line "roto-rooted" for temporary clearance of blockages and future blockages.

24.     Defendants, as officers of AMCA, having fiduciary duties to AMCA's members, including specific fiduciary duties to the Plaintiff Trust, have engaged in patent "blame the victim" conduct, alleging that sewage disposal line blockages and backups are resultant from misuse of the sewage disposal line by the residents of Unit 1-A.

25.     The usage of the sewage disposal facility for Unit 1-A by the residents of Unit 1-A has been ordinary and routine and at all times reasonable and foreseeable.

26.     The sewage disposal drain line for Unit 1-A also provides sewage disposal and drain for Units 2-A and 3-A that are situated directly above Unit 1-A in a vertical stack.

27.     Colorado law requires property owners to give prospective purchasers notice of the condition of property and specifically mandates that property owners give prospective purchasers notice of latent defects in property that would not be discovered in the exercise of reasonable diligence.

28.     The deteriorated and unrepaired condition of the sewage disposal line for Unit 1-A is a classic instance of a latent defect that a prospective purchaser would not discovery in the exercise of reasonable diligence.

7

29.    The Belize Trust, as the owner of Unit 1-A has an obligation, in the course of selling Unit 1-A, to notify any prospective purchaser the history of past sewage blockages and backups, and of the fact that defendant AMCA's officers have steadfastly refused to carry out definitive and necessary repair and remediation of the cause of past sewage backups and blockages.

30.    Roto is a full service mechanical contractor, capable of all levels of plumbing installation and repair, including the services necessary for definitive diagnosis and repair or replacement of the mechanical services for Unit 1-A.

31.    In the days following the June 2014 backup, the Plaintiff Trust entered into contractual arrangements with Roto to use Roto's sophisticated mechanical services to diagnose and remediate the defective mechanical services for Unit 1-A.

32.    On information and belief, in the month of August 2014, Defendant Lynton, acting on behalf of himself and the other officers of AMCA, engaged in direct communication with personnel of Roto, to dissuade Roto from coming on any of the premises of AMCA, including coming within Unit 1-A.

33.    The action of Defendant Lynton, described in the preceding paragraph, was intentional, and was to prevent there coming into being a definitive, expert, diagnosis of the full nature and extent of the defect(s) in the mechanical services for not only Unit 1-A, but for the AMCA complex in general.

34.    Defendant Lynton, together with the other defendants, was, and is, as stated above, also a co-owner of Unit 1-B.  The three co-defendants bought Unit 1-B out of a bankruptcy sale and have held Unit 1-B with the intent to sell Unit 1-B for a profit, rather than hold Unit 1-B for long-term personal or commercial use.

35.    Because the intent of the three defendants was, at all times, to "flip" Unit 1-B, the three defendants had no desire to take the necessary steps to achieve definitive repair of the mechanical services related to either Unit 1-A or to the entirety of the AMCA complex.  Instead, they were, and are, animated by their narrow self-interest in successfully executing a short-term flip of Unit 1-B for immediate profit, regardless of the long-term need of not only the Belize Trust as to its Unit 1-A, but for all of the members of AMCA to have the AMCA complex maintained responsibly on a permanent basis.

36.    The actions of Defendant Lynton in communicating directly with Roto and Roto's personnel constituted conduct by Defendant Lynton in impairing a Roto's performance of its contractual undertaking with, and on behalf of, the Plaintiff Trust, and even if, perhaps, short of inducing or causing Roto to breach its contractual undertakings, nevertheless constituted actionable intentional interference with the Plaintiff Trust's contractual relations with Roto.

37.    Once Lynton, acting as an officer of AMCA, made it known to Roto that Roto's personnel were not welcome on the AMCA premises, and that Roto might be stepping into a contested or disputed relationship that already existed between AMCA and the Trust, it became virtually inevitable that Roto would decline to act further on behalf of the Plaintiff Trust to

9

diagnose and remedy the defective nature of the mechanical services for Unit 1-A in particular and for the AMCA complex in general.

38.     Defendant Lynton knew, or reasonably should have known, that his direct communication with Roto and Roto's personnel would have the probable effect of causing Roto to decline to be further involved in the diagnosis and repair of the mechanical services for Unit 1-A in particular and for the AMCA complex in general.

39.     Defendant Lynton's actions in his communication with Roto, as set forth in the preceding paragraphs, constituted tortious interference with Plaintiff's business relationship with Roto, as a consequence of which Plaintiff has been rendered unable to obtain definitive repair and remediation of the mechanical services for Unit 1-A, either with Roto or with other potential providers of such diagnostic and repair services in the Roaring Fork Valley.

40.     As a result of Defendant's interference with Roto, as described above, it has become generally known in the region in which the Plaintiff Trust would logically and appropriately obtain expert mechanical services (generally speaking, the region is the communities of the Roaring Fork Valley, extending down the Colorado River Valley from Glenwood Springs, Colorado, to as far as Rifle, Colorado) that the relationship between the Plaintiff Trust as to its Unit 1-A, and the AMCA officers is fraught, and that any provider of mechanical services to the Plaintiff Trust is likely to become embroiled in, or caught in the backwash of, the ongoing dispute between the Plaintiff Trust and the defendant AMCA officers.

41.     The adverse actions of the Defendant AMCA officers, as alleged above, are calculated to serve their personal short-term interests in flipping Unit 1-B, rather than the long-term interests of the Plaintiff Trust in particular, and of the AMCA membership in general.

42.     The action or, more accurately, inaction, of the defendant AMCA officers, imputed to AMCA, in steadfast refusal to carry out definitive repair of the defect described above, is willful and deliberate, in order to inflict harm on plaintiff, due to long-running differences of opinion between the occupants of Unit 1-A and the AMCA management.  Thus the refusal of AMCA to carry out definitive repair constitutes deliberate, willful, outrageous conduct, calculated to harm the plaintiff and the occupants of Unit 1-A.

43.     As a result of the conduct alleged above, Unit 1-A cannot be marketed for what should be its fair market value, but instead can only be offered as distressed property.

44.     The reasonable fair market value of Unit 1-A, if the above-described defect were remedied, as it needs to be, would be well in excess of $1.1 million, based on recent sales of Aspen condominia with comparable location, square footage and amenities.

46.     The reasonable present fair market value of Unit 1-A, in the present circumstances, is at best no more than 40 percent to 60 percent of its reasonable fair market value as described in the preceding paragraph.  Thus the conduct of the defendant AMCA officers in deliberate refusal to carry out definitive repair is to deliberately inflict damages on the plaintiff Trust of hundreds of thousands of dollars.

11

**First Claim For Relief**
**(Injunctive Relief )**

47.    All preceding paragraphs are incorporated herein by reference.

48.    This Court should enter such preliminary and permanent mandatory injunctive relief as is reasonably necessary to compel the defendant AMCA officers to carry out definitive repair of the sewage disposal and drain line(s) serving Unit 1-A.

49.    (a)    In the alternative to the relief sought in the preceding paragraph, or in addition thereto, this Court should enter such preliminary and permanent injunctive relief as is reasonably necessary to enable Plaintiff to contract for, and complete definitive repair of the defective sewage disposal line, and to enable Plaintiff's contractors access to the general common elements of the Aspen Mountain Condominiums as is reasonably necessary for that purpose, and to compel the defendant AMCA officers to execute such applications and documents as are reasonably needed to effectuate definitive repair.

(b)    In the event of repair carried out pursuant to the immediate preceding subparagraph, this Court should enter defendant AMCA to levy and collect a special assessment from AMCA members to defray the cost of repair contracted for and carried out by Plaintiff's contractor(s), and to impose such liens on the units making up the AMCA complex as are necessary and appropriate in order to obtain the financial resources necessary for definitive remediation of the defects described above..

**Second Claim for Relief**
**(Damages)**

50.    All preceding paragraphs are incorporated herein by reference.

12

51.     Plaintiff should be awarded its damages jointly and severally against defendants for the costs of repair and remediation of the defective sewage disposal and drain line(s), and for costs associated with temporary lodging, temporary repairs and other expenses caused by the June 2014 blockage and backup. in an amount to be determined in this action.

52.     In addition to the damages sought in the preceding paragraph, Plaintiff should be awarded its damages jointly and severally against defendants for the loss of market value of Unit 1-A, in an amount to be determined in this action, but not less than $500,000.00, in any event.

### Third Claim for Relief
### (Breach of Fiduciary Duties)

50.     All preceding paragraphs are incorporated herein by reference.

51.     The actions and inactions of Defendants, as alleged above, have constituted breach of their fiduciary duties as officers of AMCA, which duties are owed to Plaintiff in particular as to Plaintiff's Unit 1-A, and as owed to the membership of AMCA in general..

52.     Plaintiff should be awarded its damages jointly and severally against defendants arising from their breach of their fiduciary duties, for the costs of repair and remediation of the defective sewage disposal and drain line(s), and for costs associated with temporary lodging, temporary repairs and other expenses caused by the June 2014 blockage and backup. in an amount to be determined in this action.

53.     In addition to the damages sought in the preceding paragraph, Plaintiff should be awarded its damages jointly and severally against defendants, on account of their breach of their fiduciary duties, for the loss of market value of Unit 1-A, in an amount to be determined in this

action, but not less than $500,000.00, in any event.

**Fourth Claim for Relief**
**(Exemplary Damages)**

54.    All preceding paragraphs are incorporated herein by reference.

55.    This claim for relief is reserved for an exemplary damage claim for outrageous conduct, as alleged above, to be added by amendment.

**Prayer For Relief**

WHEREFORE, Plaintiff prays that it should be awarded the following relief:

A.    This Court should enter such preliminary and permanent mandatory injunctive relief as is reasonably necessary to compel the defendant AMCA officers to carry out definitive repair of the sewage disposal and drain line(s) serving Unit 1-A in particular, and the AMCA Complex in general.

B.    In the alternative to the relief sought in the preceding paragraph, or in addition thereto, this Court should enter such preliminary and permanent injunctive relief as is reasonably necessary to enable Plaintiff to contract for, and complete definitive repair of the defective sewage disposal line, and to enable Plaintiff's contractors access to the general common elements of the Aspen Mountain Condominium complex as is reasonably necessary for that purpose, and to compel the defendant AMCA officers to execute such applications and documents as are reasonably needed to effectuate definitive repair.

C.    In the event of repair carried out pursuant to the immediate preceding subparagraph, this Court should enter such equitable orders as are reasonably necessary for the

14

defendant AMCA officers to levy and collect a special assessment from AMCA members to defray the cost of repair contracted for and carried out by Plaintiff's contractor(s), and to impose on the properties of the members making up the AMCA membership such liens as may be reasonably necessary to effectuate payment for the necessary costs of remediation and repair.

D.      Plaintiff should be awarded its damages against the defendants, jointly and severally, for the costs of repair, remediation and backup damages-related expenses, including alternative lodging, all related to the defective sewage disposal and drain line(s), in an amount to be determined in this action.

E.      In addition to the damages sought in the preceding paragraph, Plaintiff should be awarded its damages against the defendants, jointly and severally, for the loss of market value of Unit 1-A in an amount to be determined in this action, but not less than $500,000.00, in any event.

F.      In addition to the damages sought in the preceding paragraph, Plaintiff should be awarded its damages against the defendants, jointly and severally, for their breach of their fiduciary duties to Plaintiff, for the loss of market value of Unit 1-A in an amount to be determined in this action, but not less than $500,000.00, in any event.

G.      Plaintiff should be awarded its costs of this action against the defendants, jointly and severally, including, as may be provided by applicable law, its reasonable attorney fees.

H.      Interest as provided by law.

I.      Such other and further relief as the Court deems appropriate.

15

**Notice of Potential Determination of Foreign Law
(Fed. R. Civ. P. Rule 44.1)**

Notice is hereby given of the potential of application of the law of Belize.  Article 1 of the Plaintiff Trust is titled "PROPER LAW AND FORUM FOR ADMINISTRATION,"  and provides, "This Settlement is established under the laws of the Country of Belize and the rights of all parties and the construction and effect of each and every provision hereby shall be construed only according to the law of the Country of Belize notwithstanding that the Trustee(s) may be or become from time to time resident or domiciled elsewhere than Belize."

**Demand for Trial by Jury**

Plaintiff hereby demands trial by jury of all issues herein appropriate for submission for decision to jury.

Respectfully submitted,

*s/ Geo. M. Allen*_____
GEORGE M. ALLEN
206-A Society Drive
Telluride CO 81435
Telephone: 970.369.1000
Email: yxgeo@yahoo.com
Counsel for Plaintiff

August 17, 2016

Address of the J. Lee Browning Belize Trust:

1 Mapp Street
Third Floor
Belize City, Belize

16